# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KENNETH DANIEL BRUNKE,

       Defendant-Appellant.

UNPUBLISHED
February 13, 2018

No. 336617
Schoolcraft Circuit Court
LC No. 2015-006828-FC

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant appeals by leave granted from his plea-based convictions of obstruction of justice, MCL 750.505, and making false or misleading statements during a violent crime investigation (lying to a police officer), MCL 750.479c(2)(d). See *People v Brunke*, unpublished order of the Court of Appeals, entered February 28, 2017 (Docket No. 336617). He was sentenced to 40 to 60 months' imprisonment for the obstruction of justice conviction and 32 to 48 months' imprisonment for the lying to a police officer conviction. Defendant challenges his sentences and an order imposing $2,001.00 in restitution, to be paid jointly and severally with his co-defendant, Garry Cordell. We affirm defendant's convictions, but vacate the trial court's restitution order.

## I. BACKGROUND

Defendant was charged with 14 felonies related to the homicides of Carrie Nelson, Heather Aldrich, and Jody Hutchinson. He pleaded guilty to charges of obstruction of justice and lying to a police officer in exchange for the dismissal of the other 12 charges and his testimony against Cordell at his murder trial.

At defendant's plea hearing, defendant testified that he came home from work and was confronted in his garage by Cordell, who was armed with defendant's pistol. Cordell told defendant to go into his basement, where the bodies of Nelson and Hutchinson were located. A woman named Marietta Carlson was also waiting in the basement. Cordell told defendant that Aldrich's body was in defendant's bedroom. Cordell then asked defendant if he had any gasoline. While he did not recall his specific response, defendant acknowledged that he "probably did" have gasoline. Defendant then helped Cordell and Carlson move the bodies from

-1-

the basement into the victims' vehicle. Cordell and Carlson then drove the victims' vehicle while defendant followed in his own vehicle. The victims' vehicle was then set on fire by either Cordell or Carlson, and defendant then drove himself, Carlson, and Cordell back to his house, where they all destroyed the clothes they were wearing.

Defendant fled to Illinois because he knew a homicide investigation would ensue. In Illinois, he changed the tires on his vehicle used to drive to and from the site where the bodies were burned. When questioned by a state police detective, defendant lied stating that he last saw the victims when they left his house, alive.

## II. ANALYSIS

### A. SCORING OF SENTENCING GUIDELINES

Defendant first contends that the trial court improperly scored Offense Variables (OV) 1, 9, and 12. While OVs 1 and 12 were properly scored, we agree the trial court erred in scoring OV 9. "The proper interpretation and application of the legislative sentencing guidelines are questions of law, which [we] review[] de novo." *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* While the sentencing guidelines are now advisory, the Michigan Supreme Court has stated that the trial court must nonetheless score them and take them into account when imposing a sentence. *People v Lockridge*, 498 Mich 358, 391-392 n 28; 870 NW2d 502 (2015).

Defendant first argues that the trial court improperly scored 20 points under OV 1 (aggravated use of weapon). MCL 777.31(1)(b) provides that 20 points should be scored if "[t]he victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device." MCL 777.31(1)(b). An "incendiary device" includes "gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device." MCL 777.31(3)(b).

Defendant argues that he should have been scored zero points for OV 1 because (1) Cordell was allegedly not scored any points for OV 1, and (2) defendant was not involved in a multiple offender case. Defendant cites MCL 777.31(2)(b), which provides that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." However, contrary to defendant's argument, the statute does not state that if one offender is *not* assessed any points for OV 1, then none of the offenders may be assessed points for OV 1. A trial court may consider "all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). The victims were subjected to gasoline, which is an incendiary device under MCL 777.31(1)(b) and (3)(b), when their bodies were burned in their

vehicle using gasoline that defendant admitted "probably" came from his house. He also admitted that he assisted in transporting the bodies out of his home to the location where they were burned, and he drove Cordell and Carlson back to his house where the three of them destroyed their clothes. Not only does this evidence prove that defendant exposed the victims to an incendiary device, the fact that defendant acted in concert with Cordell and Carlson shows he was part of a multiple offender situation. Defendant admitted using or assisting in the use of an incendiary device to conceal multiple homicides. Thus, there was sufficient evidence to score 20 points for OV 1.

Defendant also argues that the trial court improperly scored 10 points for OV 9 (number of victims). MCL 777.39(1)(c) provides that 10 points should be scored if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." MCL 777.39(1)(c). Defendant contends that he should have been scored zero points for OV 9 because "the sentencing offenses of lying to a peace officer and obstruction of justice do not in themselves have physical victims." In *People v McGraw*, 484 Mich 120, 134; 771 NW2d 655 (2009), our Supreme Court held that in scoring OV 9, trial courts must consider only the conduct during the offense. Here, defendant's conduct during the charged offense included changing the tires on his vehicle and lying to a police officer. This conduct did not place any victims in danger. The *McGraw* Court expressed its concern that prosecutors could dismiss charges stemming from violent behavior only to "resurrect" such charges at sentencing in another form. *Id*. Here, as in *McGraw*, the prosecutor cannot use dismissed murder charges as part of a plea and then use those unproven allegations to score OV 9. Even more, the evidence at the plea hearing was that defendant arrived at his house *after* the victims were already murdered. Therefore, defendant's conduct could not place the victims in danger of physical injury or death, and the trial court erred when it scored 10 points for OV 9.

Defendant also argues that the trial court improperly scored 10 points for OV 12 (contemporaneous felonious criminal acts). MCL 777.42(1) provides that 10 points should be scored if either "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed," or "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed." MCL 777.42(1)(b)-(c). A felonious criminal act is "contemporaneous" if the act occurred within 24 hours of the sentencing offense and the act has not and will not result in a separate conviction. MCL 777.42(2)(a). Defendant argues that he should have been scored zero points for OV 12 because there was no evidence in the record showing that he committed other contemporaneous felonious criminal acts besides his two convictions for obstruction of justice and lying to a police officer. However, the record reflects that defendant committed at least "three . . . contemporaneous felonious criminal acts involving other crimes" because he admitted to several acts of obstruction of justice in addition to those of which he was convicted, and he also tampered with evidence. MCL 777.42(1)(c). Indeed, although the basis for defendant's obstruction of justice charge only stemmed from his acts of leaving the state and changing his car tires, he also obstructed justice by loading the victims' bodies into their vehicle, providing the gasoline used to burn the victims' vehicle and bodies, and driving Cordell and Carlson back to their house. Defendant also tampered with evidence by assisting in burning the victims' vehicle and bodies and by destroying his and the other perpetrators' clothes. These acts constituted "felonious criminal acts involving other crimes" that were committed within 24 hours of the obstruction of justice sentencing offense and would

not result in separate convictions. MCL 777.42(1)(c) and (2)(a). Therefore, the trial court's score of 10 points for OV 12 was appropriate.

Without the 10 points assessed for OV 9, defendant's OV score for the obstruction of justice conviction would have been 45 points. This reduction places him in OV level IV instead of OV level V and changes the minimum range calculated under the sentencing guidelines from 7 to 23 months to 5 to 23 months. See MCL 777.66.[1] Normally, a scoring error that alters the minimum range calculated under the sentencing guidelines entitles a defendant to resentencing. See *People v Francisco*, 474 Mich 82, 88-89; 711 NW2d 44 (2006). However, in this case, the trial court departed from the guidelines range, and if the departure is reasonable, a remand is unnecessary. See *People v Ambrose*, 317 Mich App 556, 565; 895 NW2d 198 (2016) (stating that remand is not required "for a *Francisco* error when we have determined (as in this case) that a sentencing departure is reasonable under *Lockridge* and that the sentence 'did not rely on the minimum sentence range from . . . improperly scored guidelines.' "). Thus, if the departure in this case was reasonable, remand is not required.

## B. UPWARD DEPARTURE FROM SENTENCING GUIDELINES

Defendant next argues that the trial court abused its discretion when it departed from the sentencing guidelines and sentenced him to 40 to 60 months for the lying to a police officer conviction and 32 to 48 months for the obstruction of justice conviction. We disagree.

We review a trial court's imposition of upward departure sentences for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011), adopted in *Steanhouse*, 500 Mich at 471-475.

Defendant contends that because his sentencing guidelines fell within an intermediate sanction cell, his sentencing guidelines were mandatory, requiring the trial court to give substantial and compelling reasons to depart upward. However, the Michigan Supreme Court in *Lockridge* abandoned the requirement that courts must give substantial and compelling justification for a departure sentence. *Lockridge*, 498 Mich at 391. While the *Lockridge* decision specifically applied this rule to MCL 769.34(2) and MCL 769.34(3), the Supreme Court noted that "[t]o the extent that any part of MCL 769.34 or another statute refers to use of the sentencing guidelines as mandatory or refers to departures from the guidelines, that part or statute is also severed or struck down as necessary." *Id.* at 365 n 1. MCL 769.34(4) is the portion of the statute that addresses intermediate sanction cells, and so, consistent with the directive from *Lockridge*, the part of MCL 769.34(4)(a) that mandates that a trial court impose

---

[1] Without the 10 points assessed for OV 9 on the lying to a police officer conviction, defendants' minimum range does not change. See MCL 777.67. Defendant's OV level remains at level III.

an intermediate sanction cell "unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections" is severed from the statute. Therefore, the trial court was not required to give substantial and compelling reasons to justify its sentencing decision.

Further, this Court has applied the *Lockridge* directive to intermediate sanction cells. *People v Schrauben*, 314 Mich App 181, 194; 886 NW2d 173 (2016) ("However, our Supreme Court in *Lockridge* specifically stated that any part of MCL 769.34 that refers to the guidelines as mandatory or refers to departures from the guidelines is severed or struck down." (citation omitted)). Accordingly, under *Lockridge*, the trial court was not required to impose the intermediate sanction in defendant's sentencing.

Defendant also argues that the trial court's upward departure from the sentencing guidelines was not reasonable or proportionate. We review the reasonableness of a departure sentence by applying the principle of proportionality set forth in *Milbourn*, 435 Mich 630. *Steanhouse*, 500 Mich at 476-477. The Court of Appeal's *Steanhouse* panel identified the following nonexclusive factors as relevant in determining whether a sentence was proportionate:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted), aff'd in part, rev'd in part, 500 Mich 453 (2017).]

Defendant argues that the trial court's sentence was disproportionate because it failed to give any justification for its upward departure from the sentencing guidelines. However, the trial court did in fact give its justification for its upward departure, reasoning as follows:

> And I do agree . . . in passing sentence here that this case does beg for a departure from the guidelines. What happened at the time of the event, certainly had to put a fair amount of distress with [defendant], but it's what happened afterward and that's why the charges are what they are. Obstruction of justice, and more importantly, lying to a police officer during a crime investigation.
>
> . . . [T]here was ample opportunity to take steps to right a significant wrong that you were obviously aware of, Mr. Brunke. Right from the time that you jumped in the car you could have gone in a different direction. There was no gun at your head, you were in a car alone and could have certainly taken a different direction and gotten as far away from that particular crime scene as possible. And there was other ample opportunity for you to do the right thing. And you didn't. And there was, as this [c]ourt stated, no gun to your head at that time. Mr. Cordell may still have been available but you had means and are intelligent enough to know that you could have done differently. And you didn't. And that is why this [c]ourt is going to depart from the guidelines because the

[c]ourt is satisfied that there is reason, given all the circumstances under these particular facts to depart and the [c]ourt will do so.

Further, considering the seriousness of the circumstances underlying defendant's crimes, the trial court's upward departure from defendant's sentencing guidelines was reasonable and proportionate. As the trial court noted, defendant had multiple opportunities to "do the right thing" and contact the police, but failed to do so. Instead, he elected to protect murderers and cover up the triple homicide by assisting with the transport of the victims' bodies to a remote location to destroy evidence and transport the offenders back to their home. Subsequently, he fled the state, changed his tires to further protect himself, and lied to police about what he knew after he was discovered. Thus, because the trial court stated a proper justification for its departure sentence, and because the guidelines did not fully account for defendant's assistance in the cover up of the triple homicide, the trial court's upward departure from the sentencing guidelines was reasonable and proportionate to defendant's offenses. Therefore, the departure was reasonable, and despite the error in scoring OV 9, remand is unnecessary.

## C. RESTITUTION FOR UNCHARGED CONDUCT

Defendant also argues that the trial court abused its discretion when it ordered defendant to pay $2,001 in restitution for the victims' burned car because the restitution was based on uncharged conduct. We agree. We generally review a trial court's order of restitution for an abuse of discretion, and its factual findings for clear error. *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). However, "[t]he proper application of MCL 780.766(2) and other statutes authorizing the assessment of restitution at sentencing is a matter of statutory interpretation, which [this Court] review[s] de novo." *People v McKinley*, 496 Mich 410, 414–415, 852 NW2d 770 (2014).

MCL 780.766(2) states as follows:

Except as provided in subsection (8), when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, *that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.* For an offense that is resolved by assignment of the defendant to youthful trainee status, by a delayed sentence or deferred judgment of guilt, or in another way that is not an acquittal or unconditional dismissal, the court shall order the restitution required under this section. [Emphasis added.]

In *McKinley*, the Court held that the language of MCL 780.766(2) prohibits imposing restitution for a defendant's "uncharged conduct," which the Court defined as "criminal conduct that the defendant allegedly engaged in that was not relied on as a basis for any criminal charge and therefore was not proved beyond a reasonable doubt to a trier of fact." *McKinley*, 496 Mich at 413 n 1. In making this determination, the Court in *McKinley* reasoned as follows:

. . . [W]hile conduct for which a defendant is criminally charged and convicted is necessarily part of the "course of conduct that gives rise to the conviction," the

opposite is also true; conduct for which a defendant is *not* criminally charged and convicted is necessarily *not* part of a course of conduct that gives rise to the conviction. [*McKinley*, 496 Mich at 420 (emphasis in original) (internal citation omitted).]

Here, defendant's obstruction of justice charge was based solely on "leaving the State of Michigan and attempting to dispose of . . . tires that were on his vehicle." Defendant admitted to this conduct during his plea. While defendant may have obstructed justice in other ways, MCL 780.766(2) limits restitution to "defendant's course of conduct that gives rise to the conviction." Therefore, the imposed restitution was for uncharged conduct and is prohibited. *McKinley*, 496 Mich at 413.

We affirm defendant's convictions and sentences, but vacate the trial court's order imposing $2,001.00 in restitution. We remand for the trial court to enter an order imposing $0 in restitution against defendant. We do not retain jurisdiction.


/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Thomas C. Cameron